THE NATIONAL CASH REGISTER COMPANY, a corporation, Plaintiff-Appellee,

v.

MARSHALL SAVINGS AND LOAN ASSOCIATION, a corporation, et al., Defendants-Appellants.

No. 17348.

United States Court of Appeals Seventh Circuit.

Sept. 23, 1969.

---

[*] Hon. John F. Kilkenny, United States District Judge, District of Oregon, sitting by designation.

---

Lewis E. Striebeck, Thomas R. Mulroy, Robert W. Patterson, Lewis E. Striebeck, Jr., Chicago, Ill., for defendant-appellant Marshall Savings and Loan Assn.; Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., of counsel.

Daniel Nagle, Scott, Tyrrell & Collias, Chicago, Ill., for plaintiff-appellee.

Before CASTLE, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Action by The National Cash Register Company against Marshall Savings and Loan Association and its receiver for the purchase price of an electronic data processing system.[1] Each party moved for summary judgment. The district court entered judgment in favor of National for $655,079.77. Defendants appealed.

Marshall signed an agreement to purchase the "system" April 23, 1962. The agreement said the "system" would consist of a list of tangible components. It is undisputed that all were delivered and physically installed at Marshall before May 18, 1964, except that ten teller's window machines were delivered and physically installed in August, 1964.

It is also undisputed that Marshall's data were never completely converted so that the system could be made ready to carry out its intended functions in Marshall's day to day operations. Marshall employees were to convert the Marshall data, working under supervision to be provided by National. It is conceded that Marshall, rather than National, was responsible for failure to proceed with this task.

New owners took over Marshall in the fall of 1964, the Director of Financial Institutions of Illinois took custody December 31, 1964, and a receiver was appointed April 8, 1965. The system was used, although for very limited purposes, from time to time before and after state custody began.

Defendants' position is that since the data were not converted the purchase price never became due pursuant to the purchase agreement, that since Marshall failed to convert the data National has a cause of action for damages for anticipatory breach, but that National failed in its duty to minimize damages by selling the equipment.

The critical provision of the purchase agreement is: "The Purchaser shall pay National's invoices when rendered, said invoices to be rendered when the System has been delivered, installed and certified by National as being ready for use."

---

1. Jurisdiction is founded on diversity. The parties have treated Illinois law as controlling substantive issues.

On May 18, 1964, National's service manager sent a letter to the president of Marshall, saying, in part:

"This is [to] certify that the above numbered NCR System has been delivered, installed, tested and made available for use, as of this date."

Although the letter used the word "available" rather than "ready", it is clear that the certification called for by the purchase agreement was intended. For the letter went on to explain that the 90 day warranty would become effective with the date of the letter. According to the agreement, the 90 days ran "from the date such equipment has been certified by National as ready for use."

Marshall never rejected nor disputed the May 18 letter. It is true that the ten window machines were an important part of the system and not installed until August, but it appears by affidavit that the former officers of Marshall orally promised a National representative that payment would be made. On November 19, 1964 the new president wrote to National saying that the new owners were attempting to determine the liquidity of Marshall and it would take about thirty days to decide what Marshall would be able to do. "That is, we may determine to either arrange for financing or pay for this equipment in full at that time."

The affidavits indicate a difference of opinion over the meaning of "installed". An officer of Marshall whose duty was to supervise the system, stated that it was "installed". A representative of National, on the other hand, indicated that "installed" includes "that it's actually performing on the application for which it was intended." It could well be argued that "ready for use" means that the purchaser's data has been converted so that the system could immediately begin day to day operation.

But National, at the time of the transaction, took the position that the system was installed and ready for use when it was physically installed and ready to use as soon as Marshall converted its data. Marshall, by its conduct, so unequivocally accepted the same interpretation of the agreement that it is no longer open to the receiver to advance a different one, even though arguable.

The judgment is affirmed.